IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ELIZABETH J. ECHOLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIV-08-270-M |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying her application for disability insurance and supplemental security income benefits. Chief United States District Judge Vicki Miles-LaGrange has referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). The Commissioner has answered and filed the administrative record (hereinafter Tr. __). As the parties have briefed their positions, the matter is at issue. For the following reasons, it is recommended that the Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed applications for disability insurance benefits and supplemental security income benefits on November 3, 2005, alleging a disability onset date of May 10, 2005, caused by a back injury, arthritis, stress, fatigue, and depression. Tr. 67-70, 236-41. The applications were denied on initial consideration and on reconsideration at the

administrative level.  Tr. 38, 38A, 40-44, 48-54, 242, 243-49, 250, 251-55.  Pursuant to

Plaintiff's request, a hearing was held before an administrative law judge on July 17, 2007.

Tr. 39, 260-88.  Plaintiff appeared in person with a non-attorney representative, and offered

testimony in support of her applications.   Tr. 23, 262, 263-78.   At the request of the

administrative law judge, a vocational expert also appeared and testified.  Tr. 29-30, 278-87.

The administrative law judge issued his decision on September 24, 2007, finding that

Plaintiff was not disabled within the meaning of the Social Security Act, and she was

therefore not entitled to benefits.  Tr. 9-11, 12-22.  The Appeals Council denied Plaintiff's

request for review on January 14, 2008, and thus the decision of the administrative law judge

became the final decision of the Commissioner.  Tr. 4-6.

## II.  STANDARD OF REVIEW

The Tenth Circuit Court of Appeals has summarized the applicable standard of review

as follows:

> We review the agency's decision to determine whether the factual findings are
> supported by substantial evidence in the record and whether the correct legal
> standards were applied. Substantial evidence is such relevant evidence as a
> reasonable mind might accept as adequate to support a conclusion.  However,
> a decision is not based on substantial evidence if it is overwhelmed by other
> evidence in the record or if there is a mere scintilla of evidence supporting it.
> The agency's failure to apply correct legal standards, or show us it has done
> so, is also grounds for reversal.  Finally, because our review is based on the
> record taken as a whole, we will meticulously examine the record in order to
> determine if the evidence supporting the agency's decision is substantial,
> taking into account whatever in the record fairly detracts from its weight.
> However, we may neither reweigh the evidence nor substitute our discretion
> for that of the Commissioner.

Hamlin v. Barnhart,  365 F.3d 1208, 1214 (10th Cir. 2004) (internal alterations, quotations, and citations omitted).  To determine whether a claimant is disabled, the Commissioner employs a five-step sequential evaluation process.  20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).  The claimant bears the burden to establish a prima facie case of disability at steps one through four.  See Williams, 844 F.2d at 751 and n.2.  If the claimant successfully carries his burden, the burden shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity to perform work in the national economy given the claimant's age, education, and work experience.  Id. at 751.

## III.  THE ADMINISTRATIVE LAW JUDGE'S DECISION

In determining that Plaintiff was not disabled, the administrative law judge followed the sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920.  Tr. 13-14.  He first found that Plaintiff had not engaged in substantial gainful activity since May 10, 2005,  and so he proceeded to the next step in the sequential analysis.  Tr. 14.  At steps two and three, the administrative law judge found that Plaintiff suffers from obesity, degenerative disc disease of the lumbar spine, and history of depression, and found that these impairments are severe, but not severe enough to meet or equal one of the impairments listed in 20 C.F.R. Part 404, Appendix 1, Subpart P, Social Security Regulations, No. 4.  Tr. 14-19.  The administrative law judge next found that Plaintiff has the residual functional capacity to perform light work activity, occasionally balance, stoop, kneel, crouch, crawl, and climb, but not ladders, ropes or scaffolds, with the need for a sit/stand option, and that she can

frequently handle and finger with the upper extremities; he further reduced this residual functional capacity assessment with moderate limitations in Plaintiff's ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, and interact appropriately with the general public or establish goals independently of others.  Tr. 19-21.  Based on this residual functional capacity assessment, the administrative law judge found at step four of the sequential evaluation process that Plaintiff is able to perform her past relevant work as a general office clerk.  Tr. 21. Accordingly, the administrative law judge found that Plaintiff is not disabled and he denied Plaintiff's applications.  Tr. 21-22.

## IV.  PLAINTIFF'S ARGUMENTS ON APPEAL

Plaintiff raises three issues for judicial review.  She first claims that the administrative law judge committed legal error by failing to properly evaluate her treating physician's opinion.  Plaintiff's Opening Brief, p. 14.  She next claims that the administrative law judge's residual functional capacity finding is legally flawed and not supported by substantial evidence.  Id. at 20.  Finally, Plaintiff contends that the administrative law judge's credibility assessment is contrary to law, and not supported by substantial evidence.  Id. at 25.

## V.  DISCUSSION

The medical records relevant to the issues raised in Plaintiff's appeal demonstrate that she underwent a MRI scan of her lumbar spine on August 10, 2001, which showed a central disc herniation at the L5-S1 level without involvement of the neuroforamina, an interosseous lipoma at the L4 vertebra, but no evidence of spinal stenosis.  Tr. 222.  Plaintiff visited James

A. Facello, D.O. on September 25, 2001, to follow-up with her back pain and, on her request, to discuss epidural injections.  Dr. Facello diagnosed Plaintiff with lumbar radiculopathy and prescribed physical therapy.  Tr. 209.  Plaintiff returned approximately one month later for a follow-up visit where she reported that her back pain had improved but was still present even with physical therapy.  Dr. Facello prescribed Lortab to treat Plaintiff's pain.  Tr. 208.  At a routine visit one month later on November 30, 2001, Dr. Facello diagnosed lumbar degenerative disc disease.  Tr. 207.  Plaintiff returned to Dr. Facello for treatment on January 2, 2002, and was diagnosed with low back pain.  Tr. 206.

Plaintiff did not see Dr. Facello again for back problems until February 16, 2004.  On that date, in relevant part, Dr. Facello diagnosed lumbar degenerative disc disease and osteoarthritis.  Tr. 192.  Over one year later, on March 22, 2005, Plaintiff visited Dr. Facello again with complaints of left lower back pain that was ongoing for the past six months.  Tr. 189.  She underwent a bone mineral density study which showed osteoporosis of the lumbar spine.  Tr. 184.  At a May 2005 follow-up examination, Plaintiff reported that her back pain was better, and Dr. Facello noted osteoarthritis in Plaintiff's right hand with mild effusion at the first right metacarpal joint.  Tr. 183.  Several months later, on October 7, 2005, Plaintiff visited Dr. Facello and reported that she was doing okay, with no major complaints but she had some back pain; Dr. Facello assessed musculoskeletal tenderness and a knee strain.  Tr. 181.

Thereafter, on January 3, 2006, Plaintiff underwent a consultative physical examination performed by Jerry C. Gullion, M.D.  Dr. Gullion reviewed Plaintiff's medical

history, including her previous spinal MRI film and bone density scan, and conducted a physical examination.  Tr. 232-33.  Plaintiff informed Dr. Gullion that she "strained" her back in 1987 and that this injury was treated with physical therapy and seemed to improve. Plaintiff reported that she had no further problems until 2001 when she was involved in two car accidents.  Plaintiff told Dr. Gullion that she was evaluated in the emergency room for back pain and given steroid shots because of the pain's persistence.  She reported that her pain was worse at night and, at times, radiated to her right side, but not down to her legs.  Tr. 232.  As to her wrists and hands, Plaintiff informed Dr. Gullion that she had broken her wrist eight years earlier, but that it had been treated with a cast and caused her little to no trouble. Tr. 232.  She also stated that occasionally both of her hands tingled but did not change color. Tr. 233.

Dr. Gullion's physical examination of Plaintiff revealed, in relevant part, active flexion of Plaintiff's right knee at 138 degrees, and 140 degrees for her left knee.  Her active straight leg raising for the right leg was 70 degrees, and 60 degrees for the left leg.  She displayed a good grip bilaterally with no tremor noted.  Plaintiff was observed to walk briskly without a limp, and Dr. Gullion noted that she could lie back on the table without a problem, but needed assistance to sit up, and that she could bend over 90 degrees, hop, and was capable of a "fairly good" knee bend.  Tr. 233.

Dr. Gullion ordered an x-ray of Plaintiff's lumbar spine, which he determined was unremarkable, and concluded, based upon his findings and physical examination, that Plaintiff suffered from osteoporosis and chronic lower back pain.  Tr. 233-35.  Dr. Gullion

remarked that he believed Plaintiff's pain was caused by her osteoporosis and that her disc herniation at L5-S1 would also contribute to her pain.  However, he observed that despite these conditions, Plaintiff maneuvered well.  Tr. 234.

A few days after Dr. Gullion's examination, a Residual Functional Capacity ("RFC") Assessment form was completed by Dr. Cremona Frederick, a medical consultant.  Tr. 145-152.  Dr. Frederick determined that Plaintiff's medical evidence supported exertional limitations of:  occasionally lifting and/or carrying 20 pounds;  frequently lifting and/or carrying ten pounds;  standing and/or walking with normal breaks for a total of six hours in an eight hour workday;  sitting with normal breaks for a total of six hours in an eight hour workday;  and, unlimited ability to push and/or pull.  Tr. 146.  As for postural limitations, Dr. Frederick concluded that Plaintiff could occasionally climb ramps and stairs, stoop, balance, and crouch;  frequently kneel and crawl;  and never climb ladders, ropes, or scaffolds.  Tr. 147.  No other limitations were assessed, and Dr. Frederick noted that there was no treating or examining medical source statement regarding Plaintiff's capabilities.  Tr. 148-51.

On February 7, 2006, Dr. Facello provided a Medical Source Statement on a pre-printed form wherein he reported that he was treating Plaintiff for spinal stenosis of the lumbar spine and ulnar neuropathy.  Tr. 179.  In response to questions inquiring about whether Plaintiff experienced chronic back pain and suffered from symptoms related to ulnar neuropathy associated with pain and numbness in the fingers and hands, Dr. Facello circled "YES."  In a portion of the form where Dr. Facello was asked to describe Plaintiff's symptoms related to her ulnar neuropathy, Dr. Facello indicated that Plaintiff experienced

pain and numbness in her fingers, and had symptoms in her hands.  Tr. 179.  The form then

asked Dr. Facello:

> Considering [Plaintiff's] medically determined impairments and symptoms
> therefrom, state whether she can perform a job that required her to sustain the
> following activity for 8 hours a day, five days a week, or an equivalent work
> schedule:
>
>> Stand and walk a total of 6 hours.  Lift 20 pounds occasionally
>> (up to 1/3 of the day) and frequently (from 1/3-2/3 of the day)
>> lift 10 pounds.  She would need to use her upper extremities for
>> frequent reaching and handling.

Tr. 179.  Dr. Facello placed a check in a line next to a statement saying, "[n]o, [Plaintiff]

cannot sustain the above described activities for 8 hours a day, five days a week."  Tr. 179.

In a space provided for Dr. Facello to explain the basis for his conclusion, he made no

remarks.  Tr. 179.  The form then asked Dr. Facello:

> Considering [Plaintiff's] medically determined impairments, is it reasonable
> to state that [Plaintiff] will need the opportunity at her discretion to change
> positions (e.g., from sitting to standing or walking around, to sitting, etc.) to
> help relieve problems with chronic low back pain?

Tr. 180.  Dr. Facello responded by circling "YES," and in a space provided for him to explain

his conclusions, he noted that Plaintiff had significant spinal stenosis shown by an MRI film

which would cause increased back pain or sciatica if Plaintiff remained still for excess

periods of time.  Tr. 180.  The day after completing this Medical Source Statement, Dr.

Facello saw Plaintiff for back and ulnar nerve pain.  He diagnosed osteoarthritis, lumbago,

and ulnar nerve radiculopathy for which he prescribed wrist splints and Lyrica.  Tr. 178.

On March 22, 2006, Dr. Jimmy Breazeale completed a Case Assessment Form wherein he affirmed on reconsideration Dr. Frederick's RFC assessment from January 2006. As support for his conclusion, Dr. Breazeale noted that the medical evidence of record did not support a need to revise the RFC recommendation because the limitations Plaintiff alleged from her symptoms were not supported by the medical evidence.  Tr. 159.

Plaintiff visited Dr. Facello for back issues again on June 26, 2006.  She reported experiencing back pain and resting tremors months ago with anxiety aggravated by stress, and mild muscle spasms at T6 were observed. Tr. 174-75.  Dr. Facello's relevant assessment was lumbosacral disc degeneration. Tr. 175.  Several months later, on November 30, 2006, Plaintiff visited Dr. Facello again complaining about a cough and was noted to have no back or joint pain.  Tr. 226.  Her musculoskeletal system was normal and no skeletal tenderness or joint deformity were found; however, spinal tenderness and paravertebral muscle spasm were observed.  Tr. 227.   A follow-up visit six months later, on May 16, 2007, showed that Plaintiff had no back pain, but was experiencing joint and bone symptoms.  She had a full range of motion in her right knee, but her left knee had mild tenderness and mild pain with motion. Tr. 224.

The medical records also contain information pertaining to Plaintiff's mental health. Specifically, on July 2, 2002, Plaintiff visited Dr. Facello and informed him that her mother had recently passed away and, in relevant part, Dr. Facello diagnosed her with depression. Tr. 203.  At a consultative mental status examination conducted March 10, 2006, Plaintiff reported that she had been taking Amitriptyline prescribed by Dr. Facello for the last two

years.  Tr. 153.  The consultative examiner, a psychologist, Dr. Suzanne Reams, reviewed Plaintiff's medical history and was informed by Plaintiff that she had been feeling seriously depressed since August of 2005.  Tr. 153.  Dr. Reams found Plaintiff to be polite and cooperative, and noted no problems with respect to her rate, rhythm, or clarity of speech.  Dr. Reams found no evidence of disturbance in Plaintiff's thought processes, that she had normal thought contents, normal perceptual abilities, and described her mood as anxious and dysphoric.  Tr. 155-56.  Based upon Plaintiff's answers to certain questions, Dr. Reams concluded that Plaintiff's remote memory and immediate memory were intact, and that there were no apparent problems with her recent memory.  Plaintiff had no difficulty focusing on Dr. Reams, though there were other indications of impaired concentration.  Tr. 156.

Dr. Reams diagnosed Plaintiff with Major Depressive Disorder, Recurrent, Severe Without Psychotic features, and assessed Plaintiff's current GAF score[1] at 55, and 65 as the highest over the past year.  Tr. 157.  Dr. Reams summarized Plaintiff's symptoms which lead to this conclusion as,

> pervasive feelings of sadness most days, recent memory problems, loss of interest in many previously pleasurable activities, increased irritability, difficulty concentrating, recent memory impairment, passive suicidal ideation, chronic fatigue, frequent crying spells, and intermittent insomnia . . . .

Tr. 157.

---

[1] "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning."  Langley v. Barnhart, 373 F.3d 1116, 1123 n.3 (10th Cir.  2004) (quotation omitted).

Dr. Stephanie Judice completed a Psychiatric Review Technique form on March 22, 2006.  She concluded that Plaintiff's mental impairments were not severe, and that her coexisting nonmental impairments required referral to another medical specialty.  Tr. 160. In particular, Dr. Judice reviewed Plaintiff's records for evidence of affective disorders, specifically major depressive disorder, Tr. 163, and concluded that this impairment resulted in mild limitations on Plaintiff's activities of daily living, ability to maintain social functioning, and in maintaining concentration, persistence or pace.  She also determined that Plaintiff had suffered no episodes of decompensation of extended duration.  Tr. 170.  In the notes portion of the form, Dr. Judice observed that Plaintiff's mental condition related to her physical state and that the limitations alleged as a result of Plaintiff's mental condition were not supported with evidence.  Tr. 172.  In November 2006, Dr. Facello noted that Plaintiff was experiencing abdominal discomfort caused by colon irritation and acute generalized anxiety disorder.  Tr. 229-30.

## 1.    Adequacy of the Discussion of the Treating Physician's Opinion

In her first argument on appeal, Plaintiff complains that the administrative law judge committed legal error by failing to properly evaluate the opinion of her treating physician, Dr. Facello.  Plaintiff's Opening Brief, p. 14.  Plaintiff specifically refers to Dr. Facello's conclusion, found in his February 7, 2006, Medical Source Statement, that she is unable, for eight hours per day, five days per week, to stand and walk a total of six hours, lift 20 pounds occasionally (up to 1/3 of the day), or lift ten pounds frequently (from 1/3-2/3 of the day). See id. at 16-17; Tr. 179-80.  She complains that the administrative law judge committed

three errors in evaluating this conclusion, namely: 1) erroneously characterizing it as an opinion on an issue reserved to the Commissioner; 2) insufficiently explaining how Dr. Facello's opinion conflicted with other findings; and 3) failing to properly evaluate this opinion after determining it was not entitled to controlling weight.  Id. at 17-20.

In response, the Commissioner contends that Dr. Facello's opinion reflected his judgment on an issue reserved to the Commissioner because it was a conclusion on Plaintiff's RFC without any statement bearing on what Plaintiff could do despite her impairments. Response Brief, pp. 6-8.  Further, the Commissioner defends the administrative law judge's treatment of Dr. Facello's opinion by discussing how the decision demonstrates that the administrative law judge properly considered whether Dr. Facello's opinion was contradicted by other medical evidence.  Id. at 8-15.  Finally, the Commissioner contends that Dr. Facello's opinion was not entitled to deference.  Id. at 15-16.

The Social Security Administration's regulations provide administrative law judges with specific guidance concerning how medical opinions must be weighed and how a decision should show that the administrative law judge undertook the requisite analysis when assigning weight to medical opinions.  In deciding how much weight to give the opinion of a treating physician, an administrative law judge must first determine whether the opinion is entitled to "controlling weight."  Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (quotation omitted).  An administrative law judge must give a treating physician's opinion controlling weight if it is both (1) "well- supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "consistent with other substantial evidence in

the record." Id. (quotation omitted).  Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."[2]  Id. (quotation omitted).  After considering the requisite factors, the administrative law judge must "give good reasons" for the weight ultimately assigned to the opinion.  Id. at 1301; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  "[I]f the [administrative law judge] rejects the opinion completely, he must . . . give specific, legitimate reasons for doing so."  Watkins, 350 F.3d at 1301 (quotation omitted).  An administrative law judge "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."  McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002) (quotation and emphasis omitted).  The Tenth Circuit Court of Appeals has made it clear that an administrative law judge's failure to delineate findings regarding the weight given to medical opinions from treating sources is grounds for remand because, without these findings, the decision cannot be properly reviewed.  See Watkins, 350 F.3d at 1300; Langley, 373 F.3d at 1123 (holding that because the administrative law judge failed to explain or identify claimed inconsistencies, his reasons for rejecting an opinion were not "sufficiently specific" to enable meaningful review).

---

[2] Those factors are: "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the [administrative law judge's] attention which tend to support or contradict the opinion."  Watkins, 350 F.3d at 1301 (quotation omitted).

However, not all opinions of a treating physician qualify as "medical opinions," which are defined as "judgments about the nature and severity of [a claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Statements that a claimant is "disabled" or as to what a claimant's RFC is are not "medical opinions," but instead constitute opinions on issues reserved to the Commissioner. Social Security Ruling 96-5p, 1996 WL 374183, at *1 (July 2, 1996); 20 C.F.R. §§ 404.1527(e)(1)-(2), 416.927(e)(1)-(2); see also Castellano v. Sec'y of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994) (noting that an opinion by a physician that a claimant is totally disabled is not dispositive because the final responsibility for determining the ultimate issue of disability is reserved to the Commissioner). As such, they are not entitled to controlling weight or any special significance. Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *2. Nevertheless, the administrative law judge must "evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." Id. at *3. The administrative law judge must still assess "the extent to which the opinion is supported by the record" and, in doing so, "must apply the applicable factors in 20 C.F.R. § 404.1527(d) and 416.927(d)." Id.

While discussing Dr. Facello's records, the administrative law judge acknowledged that Dr. Facello completed a Medical Source Statement indicating that Plaintiff could not sustain work activity for eight hours per day for five days per week, but remarked,

14

> [a]lthough the medical opinions of treating physicians are generally afforded great weight, the legal determination of disability is reserved exclusively to the Commissioner. An Administrative Law Judge is not bound to accept a treating physician's conclusion as to disability, particularly when it is not supported by detailed clinical and diagnostic evidence. Dr. Facello's statements [in the Medical Source Statement] lack[] clinical support and [are] contradicted by his own clinical evaluations and that of others.

Tr. 16. The administrative law judge then proceeded to discuss how the medical evidence supported this statement, and why this particular conclusion of Dr. Facello was not entitled to controlling weight. Tr. 16-17.

The foregoing paragraph from the decision could be construed as an indication that the administrative law judge refused to give controlling weight to Dr. Facello's opinion that Plaintiff could not stand and walk a total of six hours in an eight hour work day, lift 20 pounds occasionally, and frequently lift ten pounds, because it is the functional equivalent of stating that Plaintiff is disabled and thus an opinion on an issue reserved to the Commissioner. See Plaintiff's Opening Brief, p. 17. If that is what the administrative law judge intended by this paragraph, then Plaintiff is correct in her contention that the administrative law judge should not have used that as justification for refusing to give this portion of the opinion controlling weight because Dr. Facello's Medical Source Statement is not a conclusion on an issue reserved to the Commissioner. The Social Security Administration's regulations give examples of issues reserved for the Commissioner's determination, including: whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the Listing; what an individual's RFC is; whether an individual's RFC prevents him or her from doing past relevant work; how the

vocational factors of age, education, and work experience apply; and whether an individual is 'disabled' under the Social Security Act.  Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *1. In contrast, a medical opinion is a "judgment[] about the nature and severity of [a claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  Dr. Facello's Medical Source Statement does not outright state his belief that Plaintiff is "disabled," but embodies his judgment as to what Plaintiff is unable to do given her medical condition and bears upon Plaintiff's ability to perform the physical demands of work activity such as sitting, standing, and walking. <u>See</u> 20 C.F.R. §§ 404.1545(b), 416.945(b).  The opinion is not, as the Commissioner suggests, a determination of Plaintiff's RFC which is generally expressed in terms of exertional levels of work such as sedentary, light, medium, heavy, and very heavy,  Social Security Ruling 96-8p, 1996 WL 374184, at *3 (July 2, 1996), and amounts to an assessment of the claimant's exertional, postural, manipulative, environmental, and other limitations.   <u>See, e.g.</u>, 20 C.F.R. §§ 404.1545(b), 416.945(b).

However, this does not necessitate a remand.  For one, when an opinion is not given controlling weight because it pertains to an issue reserved to the Commissioner, it still must be evaluated under factors set forth in § 404.1527 and § 416.927, just as a "medical opinion" must be.  Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3.  As the forthcoming discussion will demonstrate, the administrative law judge properly evaluated Dr. Facello's opinion as a "medical opinion."  Therefore, any erroneous determination that Dr. Facello's medical source

16

statement bore upon an issue reserved to the Commissioner had no practical impact. Furthermore, the administrative law judge cited several reasons why he refused to give controlling weight to this portion of Dr. Facello's opinion; that (in the administrative law judge's opinion) the Medical Source Statement pertained to an issue reserved to the Commissioner was merely an alternative to the other reasons the administrative law judge articulated as justification for his treatment of Dr. Facello's opinion.

Additionally, as mentioned earlier, in discussing Dr. Facello's Medical Source Statement , the administrative law judge stated that: "Dr. Facello's statements lack[] clinical support and [are] contradicted by his own clinical evaluations and that of others."  Tr. 16. Plaintiff complains that the administrative law judge was not sufficiently specific in explaining why he concluded that Dr. Facello's opinion was contradicted by the clinical evaluations of other doctors.  Plaintiff's Opening Brief, pp. 17-18.  This argument is unavailing because the administrative law judge identified multiple instances where Dr. Facello's conclusions were inconsistent with the other evidence in the record, and because the administrative law judge explained why Dr. Facello's opinion was not supported by acceptable clinical and laboratory diagnostic techniques.

Notably, to be entitled to controlling weight, a treating physician's opinion must be *both* (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "consistent with other substantial evidence in the record." Watkins, 350 F.3d at 1300 (quotation omitted).  The administrative law judge identified reasons why Dr. Facello's specific opinion concerning Plaintiff's inabilities lacked support in his own records.

17

In his Medical Source Statement, Dr. Facello stated that he based his conclusions on the existence of spinal stenosis in Plaintiff's lumbar spine. Tr. 180. However, the only MRI film of Plaintiff's spine showed a disc herniation without encroachment of the neuroforamina and "no evidence of spinal stenosis." Tr. 222. Thus, it does not support the existence of the limitations Dr. Facello set forth in his Medical Source Statement. Plaintiff acknowledges as much in her briefing. Plaintiff's Opening Brief, p. 17 n.9; Reply, p. 4. Moreover, there are no other test results in Dr. Facello's records which provide a basis for his conclusion that Plaintiff suffered from spinal stenosis that limited her ability to walk, stand, and lift to the extent stated in Dr. Facello's opinion. Dr. Facello himself provided no explanation for this conclusion even though the Medical Source Statement form asked him to do so. Tr. 179.

Further, the administrative law judge discussed the fact that Dr. Facello's office records from the time period surrounding Plaintiff's alleged disability onset date through the date of the hearing do not contain examinations, findings, and opinions adequate to support Dr. Facello's opinion expressed in the Medical Source Statement. Tr. 15-17. The administrative law judge specifically observed that at the time Dr. Facello rendered this opinion, he had not seen Plaintiff in four months, and that her previous visit on October 7, 2005, was cursory and involved no physical assessment sufficient to support Dr. Facello's conclusion in the Medical Source Statement. See Tr. 16. The administrative law judge also noted that Dr. Facello did not examine Plaintiff until February 8, 2006, the day after he completed the Medical Source Statement, and that at this examination, Plaintiff reported that her back pain was unchanged from months earlier. Tr. 16. Additionally, the administrative

18

law judge thoroughly discussed the records from Dr. Facello's office notes both pre-dating and post-dating the opinion at issue, and on several dates after Dr. Facello gave his Medical Source Statement, Plaintiff reported that she was not experiencing back pain or bone and joint symptoms.  Tr. 15-17.

Plaintiff argues that the administrative law judge relied solely on Dr. Facello's records from the October 7, 2005 and February 8, 2006, office visits as support for the conclusion that Dr. Facello's records did not support the opinion expressed in the Medical Source Statement.  Reply, p. 4.  However, this argument reads the decision too narrowly as it is apparent, when viewed as a whole, that the administrative law judge was assessing the value of medical records as he discussed them sequentially.  See, e.g., Fischer-Ross v. Barnhart, 431 F.3d 729, 734 (10th Cir. 2005) (explaining that decisions should be read as a whole when findings elsewhere in the decision confirm the determination under review).  The administrative law judge clearly considered evidence before and beyond Dr. Facello's October 7, 2005, and February 8, 2006, office records mentioned in the paragraphs immediately surrounding his discussion of Dr. Facello's Medical Source Statement before concluding that it is not supported by Dr. Facello's own records. See Tr. 15-18.

Additionally, as the administrative law judge noted in the decision, Dr. Facello's conclusion regarding the extent of the limitations stemming from Plaintiff's physical impairments was inconsistent with the other medical evidence.  First, as just discussed, Dr. Facello's conclusion that Plaintiff's limitations were attributable to spinal stenosis is directly contradictory to the 2001 MRI film which showed "no evidence of spinal stenosis." Tr. 180,

222.  The administrative law judge also extensively referred to  the results of Dr. Gullion's consultative examination in arriving at the conclusion that Dr. Facello's opinion conflicted with other medical evidence.  Tr.  15-16.  As the administrative law judge observed, Dr. Gullion read Plaintiff's 2001 MRI report which described central disc herniation at L5-S1, which he believed would contribute to her pain; however, he found that she maneuvered well overall.  Tr. 16, 234.  Further, as the administrative law judge discussed, Dr. Gullion observed that Plaintiff could bend 90 degrees and had an unremarkable lumbar spine x-ray, and a good bilateral grip without tremor.  Tr. 16, 233.  The administrative law judge also noted that Dr. Gullion found that Plaintiff had no pedal edema, observed active flexion of her right and left knees at 138 degrees and 140 degrees, respectively, and that she had active straight leg raise results at 70 degrees on the right leg and at 60 degrees on Plaintiff's left leg. Tr. 15-16, 233.  The administrative law judge's juxtaposition of the results from these two physicians' examinations constitutes an adequate discussion of the contradiction between Dr. Facello's opinion and the other medical evidence.

Moreover, two state agency physicians reviewed the record, including Dr. Facello's records and the results of Dr. Gullion's examination, and concluded that the medical evidence warranted a less restrictive RFC assessment than that ultimately set forth in the decision.  Compare Tr. 146, 159, with Tr. 19.  Indeed, the original RFC conclusion made prior to the date Dr. Facello rendered his Medical Source Statement was affirmed even in light of Dr. Facello's opinion because Dr. Brezeale noted that there was no medical or other evidence in the file to support the limitations alleged.  Tr. 159.

20

Plaintiff argues that the situation presented here is akin to that found in <u>Bowman v. Astrue</u>, 511 F.3d 1270 (10th Cir. 2008), wherein the Court of Appeals remanded a social security appeal for reconsideration based upon the administrative law judge's failure to make sufficient findings at phases two and three of step four. <u>Id.</u> at 1273. In *dicta*, the Court of Appeals commented on another issue raised in the appeal concerning the administrative law judge's treatment of an "other source" opinion provided by the claimant's primary medical provider who was a registered nurse and family practitioner. <u>Id.</u> The Court of Appeals suggested that, on remand, the administrative law judge should reconsider the other source's opinion in light of a Social Security Ruling issued after the administrative law judge rendered his decision in the case. <u>See id.</u> at 1274-75. The Court of Appeals was troubled by the administrative law judge's "apparent assumption" that the consultative examiner's findings were inconsistent with the other source's opinion given that the Court of Appeals viewed them as "arguably consistent." <u>Id.</u> at 1275-76.

The situation presented here is readily distinguishable from <u>Bowman</u>. While Dr. Facello and Dr. Gullion both found that Plaintiff suffered chronic back pain (and the administrative law judge assessed physical restrictions consistent with those conclusions, Tr. 19), their opinions differ drastically in terms of identifying the source of Plaintiff's back pain. The tests Dr. Gullion performed upon Plaintiff and his review of her medical records lead him to conclude that her pain was likely caused by her osteoporosis and her central disc herniation at L5-S1, Tr. 234, while Dr. Facello assessed restrictions based upon lumbar spinal stenosis, which the 2001 MRI film demonstrated she did not have, and based upon her ulnar

21

radiculopathy, for which he had neither diagnosed nor treated Plaintiff prior to the time he rendered the Medical Source Statement.   Tr. 179-80.   These physicians' respective interpretations of the 2001 MRI film are not "arguably consistent," and the administrative law judge *did* assess restrictions accounting for the consistencies between their opinions - namely that Plaintiff experienced chronic back pain.  See Tr. 19-21.  Accordingly, Bowman is not controlling.

Since Dr. Facello's opinion expressed in his Medical Source Statement was not based upon his own records and observations and is inconsistent with the other medical evidence, and because the administrative law judge discussed these deficiencies with Dr. Facello's opinion in his decision, the administrative law judge did not legally err in refusing to give Dr. Facello's opinion controlling weight.  See Watkins, 350 F.3d at 1300.

Turning to Plaintiff's contention that the administrative law judge did not properly evaluate Dr. Facello's opinion under the factors set forth in 20 C.F.R. § 404.1527 and § 416.927 after determining it was not entitled to controlling weight, the undersigned concludes that the administrative law judge's discussion of these factors in conjunction with Dr. Facello's opinion is sufficient.  According to these regulations, the administrative law judge must consider the treating physician's opinion in light of several factors and the decision demonstrates that the administrative law judge performed this analysis.  For example, with respect to the length of the treatment relationship between Plaintiff and Dr. Facello, the administrative law judge noted that it was "ongoing" and that he had provided her medical care for "many years," Tr. 15, and he also observed that Dr. Facello's Medical

Source Statement was given at a time when he had not seen Plaintiff in several months.  Tr. 16.  As to the nature and extent of the treatment relationship between Plaintiff and Dr. Facello, the administrative law judge observed that she received general treatment for a variety of ailments from Dr. Facello, Tr. 15, 17, and that on the examination prior to the date on which he rendered the opinion at issue, he had not performed a thorough physical examination. Tr. 16.  As to whether Dr. Facello's conclusion was supported by relevant evidence and consistent with the record as whole, the administrative law judge observed that Dr. Facello had not performed a thorough examination of Plaintiff at the appointment preceding his Medical Source Statement, and that no diagnostic evidence supported his conclusions regarding ulnar neuropathy at the appointment immediately following the execution of the Medical Source Statement.  Tr. 16.

Accordingly, Plaintiff's complaints that the administrative law judge did not consider "the fact that Dr. Facello saw [Plaintiff] at least 18 times from 2001 through 2007" or that "Dr. Facello had referred [Plaintiff] multiple times for additional tests or treatment" are unfounded.  Plaintiff's Opening Brief, p. 19.  The discussion of these factors in connection with the administrative law judge's review of the medical evidence demonstrates that he considered the appropriate factors in determining how much weight to give Dr. Facello's opinion and provides a basis for reviewing his analysis.  It is thus sufficient.  See Watkins, 350 F.3d at 1300-1301.  Plaintiff's first point of error does not merit relief.

## 2.      Residual Functional Capacity Assessment

For her second point on appeal, Plaintiff alleges that the administrative law judge committed legal and factual errors in formulating the mental and physical limitations of the RFC finding.  Plaintiff's Opening Brief, p. 20.  Specifically, as to the mental limitations, Plaintiff complains that the administrative law judge defined her "moderate" mental limitations in a way that they amounted to no appreciable measure of limitation at all in conflict with the Tenth Circuit Court of Appeals' holding in Haga v. Astrue, 482 F.3d 1205 (10th Cir. 2007).  Id. at 21-22.  Concerning her physical RFC, Plaintiff contends that the administrative law judge committed error by improperly discounting Dr. Facello's opinions as discussed in her first point of error and failing to state how long she could remain sitting, standing, or walking at one time during a workday.  Id. at 23-24.  According to Plaintiff, the administrative law judge's RFC assessment also was factually flawed in that the evidence, Dr. Facello's medical source statement specifically, demonstrated that she would not be able to stand and/or walk for up to six hours in an eight hour workday.  Id. at 24.   In response the Commissioner argues that the administrative law judge's definition of "moderate" mental limitations did include functional limitations and thus renders the instant situation distinguishable from Haga.  Response Brief, pp. 17-18.  The Commissioner also discusses the evidence that supports the mental limitations assessed by the administrative law judge. Id. at 18-21.  As to Plaintiff's complaints concerning the physical limitations in the residual functional capacity formulation, the Commissioner contends that the opinion shows that the administrative law judge intended Plaintiff to have an "at will" sit/stand option, and that the

24

evidence does not support limitations stemming from Dr. Facello's medical source statement. Id. at 22.

Part of the administrative law judge's analytical task is to determine a claimant's residual functional capacity, defined as what she can still do despite her limitations. 20 C.F.R. §§ 404.1545(a); 416.945(a). The administrative law judge has the duty to make specific and detailed predicate findings and to include a sufficient narrative discussion concerning a claimant's RFC. Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (stating that the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, must contain a thorough discussion and analysis of the objective medical and other evidence, and must include a discussion of why reported symptom-related functional limitations can or cannot reasonably be accepted as consistent with the medical evidence); see also Winfrey v. Chater, 92 F.3d 1017, 1023-24 (10th Cir.1996) (describing the administrative law judge's responsibilities in assessing RFC under step four of the Commissioner's process). In making the RFC assessment, the administrative law judge must always consider and address medical source opinions, and if the RFC assessment conflicts with an opinion from a medical source, the administrative law judge must explain why the opinion was not adopted. Soc. Sec. Rul 96-8p, 1996 WL 374184, at *7.

A.     Physical Limitations

Addressing Plaintiff's complaints concerning the administrative law judge's physical RFC limitations first, the undersigned notes initially that insofar as Plaintiff argues that the RFC assessment should have contained limitations paralleling those from Dr. Facello's

opinion discussed in the first point of error, such limitations were not warranted because Dr. Facello had no basis for making them as explained in the previous section of this Report and Recommendation.

In the decision the administrative law judge determined that Plaintiff had the physical residual functional capacity to: "perform light work activity-occasionally balance, stoop, kneel, crouch, crawl and climb, but not ladders, ropes or scaffolds; with need for a sit/stand option; she can frequently handle and finger with the upper extremities . . . ." Tr. 19.  The RFC formulation is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis, [meaning] 8 hours a day, for 5 days a week, or an equivalent work schedule."  Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *1.  The Commissioner defines "light work" as,

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).  An activity is performed "occasionally" when it occurs "from very little up to one-third of the time," and frequently when it occurs "from one-third to two-thirds of the time."  Social Security Ruling 83-10, 1983 WL 31251, at *5-6 (1983).  Further, "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  Id. at *6. Thus, it is evident from

the decision that the administrative law judge concluded that Plaintiff was capable of balancing, stooping, kneeling, crawling, crouching, and climbing for up to approximately two and a half hours of an eight hour workday; handling, fingering, and lifting for at least two and a half and up to  approximately five hours per day; and standing or walking, off and on, for a total of approximately six hours of an eight hour workday.  See id. at *5-6, Tr. 19.

Plaintiff's complaint that this finding is not sufficiently specific to satisfy the administrative law judge's obligation to, "describe the maximum amount of each work-related activity the individual can perform" Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7, because the administrative law judge did not delineate exactly how long Plaintiff could sustain the activities of sitting, standing, or walking at any given time (versus the amount of time Plaintiff could sustain these activities over the course of an entire workday), is not persuasive.   See Plaintiff's Opening Brief, p. 24.  Contrary to Plaintiff's claims the administrative law judge's RFC assessment is sufficiently specific to satisfy the obligation to delineate Plaintiff's ability to perform specific work-related activities.  The administrative law judge's specific findings as to Plaintiff's abilities to perform work-related activities are easily discerned from the RFC conclusion as described in the foregoing paragraph.  Indeed, at the hearing the vocational expert was able to testify about jobs a hypothetical individual with Plaintiff's vocational characteristics could perform based upon the very RFC description provided by the administrative law judge in the decision.  Tr. 280-86. Given that both the undersigned and the vocational expert were able to deduce what specific physical limitations were set forth in the RFC finding, it satisfies the administrative law judge's obligation to

provide specific and detailed findings and to include a sufficient narrative discussion.  <u>See</u> Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7.

Addressing Plaintiff's contention that substantial evidence does not support the administrative law judge's conclusion that Plaintiff could stand and/or walk for up to six hours per day, there is no merit to this claim.  Plaintiff points generally to Dr. Facello's medical source statement and to Dr. Gullion's diagnostic findings as support for her claim that the administrative law judge's RFC determination is not supported by substantial evidence.  Plaintiff's Opening Brief, p. 24.  However, this evidence does not overwhelm, or even contradict, the evidence upon which the administrative law judge based his RFC findings.   For example, the administrative law judge incorporated the sit/stand recommendation set forth in Dr. Facello's opinion, Tr. 19, 180, and specifically discussed his incorporation of Dr. Gullion's findings in the RFC assessment.  Tr. 15-16, 20-21.  Indeed, the administrative law judge's RFC assessment was *more* restrictive than the one set forth by two state agency medical examiners who reviewed all of the medical evidence generated in support of Plaintiff's claim.  <u>Compare</u> Tr. 19, <u>with</u> Tr. 146-148, 159. Plaintiff has pointed to no reliable evidence overwhelming the findings set forth in the administrative law judge's RFC assessment; thus, as it is supported by the record and not overwhelmed by contrary evidence, it is based upon substantial evidence.

Finally, there is no merit to Plaintiff's contention that it was error for the administrative law judge to determine she had the RFC to perform light work with a sit/stand option.  Plaintiff's Opening Brief, p. 24.  In Social Security Ruling 83-12, the Commissioner

recognized that when a claimant has the RFC for light or sedentary work, the claimant may not be functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work or the prolonged standing or walking contemplated for most light work.  Soc. Sec. Rul 83-12, 1983 WL 31253, at *4 (1983).  The Ruling continues: "most jobs have ongoing work processes which demand that worker be in a certain place or posture for at least a certain length of time to accomplish a certain task."  Id.  However, the Ruling also notes that "[t]here are some jobs in the national economy . . . in which a person can sit or stand with a degree of choice."  Id.  Thus, the Ruling admonishes an administrative law judge to consult a vocational expert "[i]n cases of unusual limitation of ability to sit or stand . . . to clarify the implications for the occupational base."  Id.

Here that is precisely what the administrative law judge did: he asked the vocational expert about whether the hypothetical individual with Plaintiff's specific vocational characteristics and RFC limitations would be able to perform any work.  See Tr. 281-86.  The vocational expert identified Plaintiff's past work as a general office clerk as work that Plaintiff would be able to perform because it was the type of work where she would have the liberty to alternate sitting and standing at will.  Tr. 286.  This testimony is the evidence upon which the administrative law judge concluded that Plaintiff was capable of performing her past relevant work.  The administrative law judge followed the procedure set forth in Ruling 83-12 to determine whether there would be any work Plaintiff could perform if she was limited to light work with an at-will sit/stand option.  Soc. Sec. Rul. 83-12, 1983 WL 31253,

at *4. Thus, no error occurred in connection with the administrative law judge's assignment of a sit/stand option in Plaintiff's RFC.

In a footnote, Plaintiff claims that the administrative law judge should not have relied on the sedentary job of appointment clerk because the administrative law judge did not make predicate findings regarding Plaintiff's transferrable skills. Plaintiff's Opening Brief, p. 24 n.12. This argument will not be considered because it has not been properly raised and briefed. See, e.g., Michael Foundation, Inc. v. Urantia Foundation, Nos. 01-6347, 01-6348, 61 Fed. Appx. 538, 547 n.10 (10th Cir. Mar. 11, 2003) (refusing to consider argument because it was raised in a footnote and outside the enumerated issues raised in the appeal).[3] Further, as the administrative law judge found that Plaintiff was capable of performing her past relevant work, this issue need not be addressed if the Court finds that the decision of the administrative law judge is supported by substantial evidence.

### B.    Mental Limitations

The administrative law judge set forth mental limitations in Plaintiff's RFC, including: "moderate limitations in ability to understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; interact appropriately with the general public or establish goals independently of others." Tr. 19. The administrative law judge defined "moderate" as "more than a slight limitation in this area but the individual is

---

[3] This and any other unpublished disposition cited pursuant to Fed. R. App. P. 32.1 and Tenth Circuit Rule 32.1.

still able to function satisfactorily." Tr. 19.  Plaintiff contends that this definition lacks any

functional significance, but her argument is unfounded.

In Haga v. Astrue, 482 F.3d 1205 (10th Cir. 2007), a consultative mental examiner

executed a mental RFC form wherein he indicated that the claimant's mental impairments

resulted in moderate limitations in seven out of ten functional categories.  In the decision at

issue in Haga, the administrative law judge incorporated four of the mental RFC limitations

that the consultative examiner suggested, but not the other three, and provided no explanation

for why he chose to incorporate certain limitations while rejecting others.  Haga, 482 F.3d

at 1207.  Accordingly, the Court of Appeals remanded the case so that the administrative law

judge could explain why he rejected the three mental RFC  limitations suggested by the

consultative examiner.  Id. at 1208.  In the appeal, the Commissioner defended the

administrative law judge's actions by arguing that the "moderate" limitations suggested on

the mental RFC form executed by the consultative examiner indicated that the claimant  was

"still able to function satisfactorily" and therefore it made no difference that the

administrative law judge failed to incorporate the limitations into the mental RFC

assessment.  Id.  The Court of Appeals rejected this contention, noting "that the government

has taken the definition for 'moderate' on the mental RFC form out of context–a moderate

impairment is not the same as no impairment at all, and [the consultative examiner] clearly

intended to indicate impairments on this form."  Id.

Haga is inapposite.  As the Haga Court of Appeals noted, the Commissioner there

attempted to contend that a "moderate" mental limitation where the individual was "still able

to function satisfactorily" was the functional equivalent of no impairment whatsoever in order to defend the administrative law judge's failure to discuss why he did not incorporate mental RFC limitations suggested by the evidence.  Id.  However, the Court of Appeals rejected this contention, noting that a "moderate" limitation indicates that the impairment does affect the skill to a certain degree, but not so much that the claimant is unable to function satisfactorily.  Id. This is the very meaning that the administrative law judge attached to the term "moderate" in the mental RFC assessment.  Compare id., with Tr. 19. The administrative law judge's intent clearly was to indicate that Plaintiff would have some (moderate) limitations on her mental work-related abilities, but that she would still be able to perform the function.  See Tr. 19.  Haga thus has no applicability to the facts of this case.

Furthermore, Plaintiff's contention that the administrative law judge's mental RFC assessment is inconsistent with the conclusion that she suffered from a "severe" mental impairment is also meritless.   The administrative law judge's mental RFC conclusion accounts for the limitations set forth by Dr. Reams in the consultative mental status examination (which was the only time the effect of Plaintiff's mental conditions on her work abilities was evaluated), and, contrary to Plaintiff's claims, the limitations the administrative law judge set forth are consistent with her GAF scores.  The administrative law judge's mental RFC finding contained moderate limitations on her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration; and interact appropriately with the general public and set goals independently,  Tr. 19, which reflects Dr. Reams' determination that Plaintiff experienced recent memory problems and difficulty

concentrating as a result of her mental conditions.  Tr. 156-57.  Plaintiff's GAF scores of 55 at the time of Dr. Reams' examination and 65 as the highest in the preceding year also coincide with the limitations that the administrative law judge assessed because a GAF score of 51-60 indicates "moderate symptoms" such as "flat affect and circumstantial speech, occasional panic attacks" or moderate difficulty in social, occupational, or school functioning such as having "few friends, conflicts with peers or co-workers" while a GAF score of 61-70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well . . . ."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, p. 32 (Text Revision 4th ed. 2000).  This is particularly true given that the showing required to demonstrate the existence of a "severe" impairment is *de minimus*.  Williams, 844 F.2d at 751.

Moreover, an impairment is "severe" if it significantly limits an individual's physical or mental ability to do basic work activities.  See 20 C.F.R. §§ 404.1521(a), 416.921(a).  But the existence of a "severe" mental impairment does not automatically mean that a claimant is precluded from performing any work-related mental abilities.  See, e.g., Winfrey, 92 F.3d at 1023 (discussing administrative law judge's obligation to make RFC findings at step four after determining at step two that an impairment is severe).  Consequently, Plaintiff's second point of error does not warrant relief.

### 3.       Credibility Determination

For her final point of error, Plaintiff argues that the administrative law judge's credibility analysis is contrary to law and that the determination is not supported by substantial evidence.  Plaintiff's Opening Brief, p. 25.  She complains that the administrative law judge made an adverse credibility determination based solely upon her failure to exhibit objective signs of pain and contends that the administrative law judge failed to discuss all of the factors relevant to a credibility analysis.  Id. at 27.   As to the factors that the administrative law judge did discuss, Plaintiff argues that he arrived at incorrect conclusions. Id. at 27-29.

The Commissioner responds by maintaining that the administrative law judge's credibility analysis was both legally and factually sufficient.  The Commissioner notes that the administrative law judge is not required to perform a formalistic factor-by-factor recitation of the evidence so long as the decision shows what evidence the administrative law judge relied upon in evaluating credibility.  Response Brief, p. 24.

The framework for the proper analysis of a claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  The administrative law judge must consider: (1) whether the existence of a medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been established by objective medical evidence, (2) if so, whether there is at least a "loose nexus" between the impairment and the claimant's subjective allegations, and (3) if so, whether,

34

considering all of the evidence, both objective and subjective, the claimant's symptoms are in fact disabling.  Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993).

When the existence of a medically determinable physical or mental impairment that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the claimant's ability to do basic work activities. Social Security Ruling 96-7p, 1996 WL 374186, at *2 (July 2, 1996).  Some of the factors that may be considered in assessing the credibility of a claimant's statements about the effects of her symptoms include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant receives or has received for relief of pain or other symptoms; (5) treatment, other than medication, the claimant has received for relief of pain or other symptoms; and (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms. Id. at *3; 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); Luna, 834 F.2d at 164-66; see also Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir. 1988) (listing other factors including "frequency of medical contacts, . . . subjective measures of credibility that are peculiarly within the judgment of the [administrative law judge], the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.").

Credibility determinations are peculiarly the province of the finder of fact, and should not be upset when they are supported by substantial evidence. <u>Diaz v. Sec'y of Health and Human Servs.</u>, 898 F.2d 774, 777 (10th Cir. 1990). An administrative law judge must closely and affirmatively link his credibility findings to substantial evidence; a conclusory finding is insufficient. <u>Kepler v. Chater</u>, 68 F.3d 387, 391 (10th Cir. 1995). However, a "formalistic factor-by-factor recitation of the evidence" is not required. <u>Qualls v. Apfel</u>, 206 F.3d 1368, 1372 (10th Cir. 2000). An administrative law judge's credibility analysis is sufficient so long as the decision sets forth the specific evidence relied upon in making the determination. <u>Id.</u>

After reviewing the standards applicable to credibility determinations in social security proceedings, the administrative law judge made the following findings regarding Plaintiff's credibility:

> The Administrative Law Judge considered [Plaintiff's] alleged multiple severe impairments, which according to her, caused significant limitations on her ability to perform all work-related activities. As explained, significant limitations have been assessed to [Plaintiff]'s residual functional capacity, which allow for her subjective complaints and limitations. However, to the extent [Plaintiff] alleged being totally precluded from all work-related activities, these subjective complaints regarding the severity of limitations caused by her impairments are considered credible, but not disabling to the extent alleged. The Administrative Law Judge does not mean to imply that [Plaintiff] is a perfectly healthy individual. However, she is not totally debilitated or disabled within the context of the Social Security Act. The Administrative Law Judge does recognize that [Plaintiff] will experience difficulties from time to time in certain work situations, but certainly not to the degree alleged.

Tr. 20-21 (paragraph breaks omitted).  The administrative law judge also commented on various issues relevant to the credibility determination as he discussed evidence in his decision.  See, e.g., Tr. 18.

The administrative law judge's credibility analysis is sufficient because the administrative law judge applied correct legal standards, considered the relevant factors, and linked his findings to specific substantial evidence in the record.  For example, the administrative law judge discounted Plaintiff's evidence that she experienced dizziness and drowsiness as side effects of her medications, Tr. 74, 132, because he noted that Plaintiff had not complained to any physician about these effects and that none had ever recorded in his or her notes that Plaintiff appeared "lethargic, groggy, foggy, or lackadaisical." Tr. 18; Luna, 834 F.2d at 166.[4]  The administrative law judge also discussed how the medical evidence showed that even though Plaintiff's back problems first manifested in 1987 or 1988 and many of her medical records date back to at least 2001, she nevertheless continued to work until 2005.  Tr. 15; see Orrick v. Sullivan, 966 F.2d 368, 370 (8th Cir. 1992) (per curiam) (deciding that ability to work despite impairment suggests claimant is not disabled); see also Eden v. Barnhart, No. 04-7019, 109 Fed. Appx. 311, 315 (10th Cir. Sept. 15, 2004).  Further, the administrative law judge considered Plaintiff's testimony concerning her urinary frequency, but declined to conclude that it impacted her ability to work to the extent alleged

---

[4] The undersigned notes that this finding by the administrative law judge is also consistent with at least one of Plaintiff's written reports when she reported "None" in the space provided for any side effects from her medication.  Tr. 116-117.

partly because, as discussed in the decision, Plaintiff did not complain about this condition to her treating physician.  Tr. 18.

Plaintiff's argument is nothing more than a review of the medical and testimonial evidence that supported her claim tied to a contention that the administrative law judge did not closely and affirmatively link his findings to substantial evidence in the record.  <u>See</u> Plaintiff's Opening Brief, pp. 27-29.   But the foregoing discussion shows that the administrative law judge did follow correct legal standards by linking his credibility determinations to specific evidence in the record.  <u>See</u> <u>Kepler</u>, 68 F.3d at 391.  Plaintiff is simply asking the Court to substitute its judgment for that of the administrative law judge, which courts have repeatedly declined to do as the administrative law judge's conclusions are entitled to deference because he is "the individual optimally positioned to observe and assess witness credibility."  <u>Casias v. Sec'y of Health & Human Servs.</u>, 933 F.2d 799, 801 (10th Cir. 1991).   Moreover, the administrative law judge took into account many of Plaintiff's complaints, and he specifically noted that he found many to be credible and factored them into the RFC determination.  <u>See</u> Tr. 20.  Accordingly, this point does not warrant relief.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the administrative law judge, and the pleadings and briefs of the parties, the undersigned Magistrate Judge finds that the administrative law judge applied correct legal standards and that the decision is supported by substantial evidence.

Accordingly, it is recommended that the final decision of the Commissioner of Social Security Administration be affirmed.  Plaintiff is advised of her right to file an objection to the Report and Recommendation with the Clerk of this Court by May 28, 2009, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 8th day of May, 2009.**

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE